**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------X
DANIEL RATHGABER,

                              Plaintiff,

      -against-

THE TOWN OF OYSTER BAY, and STEVEN L. LABRIOLA, individually and as the Town Clerk,

                              Defendants.
----------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**
06 CV 5450 (ADS)(WDW)

**APPEARANCES:**

**WILLIAM J. EPPIG, ESQ.**
Attorney for the Plaintiffs
1175 Montauk Highway
West Islip, New York 11795

**GREGORY J. GIAMMALVO**
**TOWN ATTORNEY FOR THE TOWN OF OYSTER BAY**
54 Audrey Avenue
Oyster Bay, New York 11771
      By:    Donna Swanson, Assistant Town Attorney
               Frank Scalera, Deputy Town Attorney

**SPATT, District J.**

      Daniel Rathgaber (the "plaintiff") brings this action against the Town of Oyster Bay (the "Town"), and Steven L. Labriola ("Labriola") (collectively the "defendants"), alleging that the Town's licensing provisions for commercial shell-fishing violate the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment to the United States Constitution. The plaintiff alleges that Town's

licensing provisions are unconstitutional both on their face and as applied to him. Presently before the Court are the objections of the parties to a Report and Recommendation of United States Magistrate Judge William D. Wall, issued on December 20, 2006, and the plaintiff's motion, brought by order to show cause, seeking declaratory relief and an order directing the Town to issue a clamming license to him.

## I. BACKGROUND

### A. The Referral of this Matter

On October 6, 2006, the plaintiff commenced this action alleging that the Town of Oyster Bay's denial of a shell-fishing license to him violated the Equal Protection and Due Process clauses of the Constitution. At the time he filed the complaint, the plaintiff also filed an motion, by order to show cause, seeking:

> (a) an Order declaring the duration residency requirement of Section 196-8 of the Town of Oyster bay Code Unconstitutional.
>
> (b) an Order directing the Clerk of the Town of Oyster Bay to issue a clamming license to the plaintiff, Daniel Rathgaber.

On October 12, 2006, the Court held a hearing on the plaintiff's order to show cause. At the hearing, it was determined that a factual dispute existed and that an evidentiary hearing was necessary. Thus, the Court referred the matter to Judge Wall to hear and report.

There is some confusion regarding the scope of the referral that needs to be resolved at the outset. At the show-cause hearing, the Court referred the case to Judge Wall for the purpose of determining two questions: (1) was the plaintiff a resident of the Town of Oyster Bay; and (2) was he treated differently than similarly situated individuals.

On October 13, 2006, the Court issued a written Order intending to memorialize the referral of this matter. In that Order, the Court stated that the matter was being referred "for the purpose of resolving all questions of fact and law relating to the plaintiff's request for a preliminary injunction directing the Town to issue a license to him, and to issue a report and recommendation to that effect pursuant to Rule 72(b) of the Federal Rules of Civil Procedure." This is the language the Court typically uses when matters such as this are referred to a Magistrate Judge to hear and report. However, it was a mistake to use this broad language in this case. It was not the intention of the Court to broaden the scope of the referral to Judge Wall. Ultimately, this over-broad language in the referral order was of no serious consequence, because Judge Wall wisely and correctly limited the scope of his Report and Recommendation to findings of fact on two relevant factual issues. First, whether Rathgaber was a resident of the Town of Oyster Bay and second, whether he was treated differently from other similarly situated individuals.

### B. The Evidentiary Hearing

On October 26, 2006, Judge Wall held an evidentiary hearing. The plaintiff testified that at the time of the hearing, he lived at 30 Terrace View Road, Farmingdale, New York, which is located in the Town of Oyster Bay. Evidentiary Hearing Transcript ("Tr.") 11. He testified that he first moved to Farmingdale in June, 2005. At that time, he resided at 232 Eastern Parkway, Farmingdale, also in the Town of Oyster Bay, with a man named Richard Schenna. Tr. 12-13. The plaintiff's objective in moving to Farmingdale was to establish residency in the Town of Oyster Bay so that he could obtain a clamming permit. Tr. 13. There is also documentary evidence in the record that the plaintiff was a resident of 232 Eastern Parkway, Farmingdale, on May 15, 2005 (see the Rental Leasing Agreement, Ex. A) and was a resident on or before June 9, 2005 (see the plaintiff's driver's license, Ex. A).

On July 20, 2005, the plaintiff applied for a shell-fishing permit. Tr. 16; Pl's Ex. A. As proof of his residency, the plaintiff submitted a New York State Marine Permit Certificate; a boat registration; his New York State driver's license; a letter from the phone company Verizon acknowledging his service package; and a "rental/lease agreement." All of these items contained the address at 232 Eastern Parkway. Pl's. Ex. A. The plaintiff's application was rejected on the ground that he had not yet lived in the Town of Oyster Bay for a period of one year. Tr. 18.

In March, 2006, the plaintiff moved to 30 Terrace View Road in Farmingdale in the Town of Oyster Bay, where he resided at the time of the hearing. Tr. 18. On June 22, 2006, the plaintiff went to the Town Clerk's Office to apply for a clamming license. Tr. 24. As proof of his residency in the Town of Oyster Bay, the plaintiff submitted his New York State Driver's License; a boat registration; his New York State Marine Permit Certificate; a "Sears" credit card statement; and a "Verizon" telephone bill. At the request of the Town Clerk, the plaintiff also submitted a letter from his landlord, Stephen Loiacono, at the 30 Terrace View Road residence. Pl's. Ex. B; Tr. 24. All of these documents contain the address at 232 Eastern Parkway or 30 Terrace View Road. Pl's Ex. B. The Town did not issue a license to the plaintiff at that time. On subsequent dates, the plaintiff inquired about the status of his license, and was told that it was "under review," but was not given any other information. Tr. 24-25.

On July 13, 2006, the Town sent a letter to the plaintiff, stating that it could not give him a license due to "insufficient evidence" of his residency within the Town of Oyster Bay. Pl's Ex. B. The letter asked the plaintiff to submit further documentary evidence of his residence in the Town, including his State and Federal tax returns, his renter's insurance, and his voter's registration. Tr. 25; Pl's Ex. B. The plaintiff does not possess such documentation. Tr. 25, 33. Thus, no license was issued to the plaintiff. According to the plaintiff, during this time he was not able to get a

clamming license in any other town because he lived in the Town of Oyster Bay. Tr. 26. Although he did not receive a permit, no formal denial was ever issued to him.

The plaintiff testified that on the same day that he went to the Town Clerk's Office to apply for his shell-fishing license, another clammer, Kenneth Howes, also applied for a license and it was awarded to him "on the spot showing less information than [Rathgaber] did." Tr. 27. In support of his application, Howes submitted his New York State driver's license; his New York State Marine Permit Certificate; "Keyspan" and "LIPA" energy bills; and a letter from the State University of New York at New Paltz. All of these documents reflected Howes' or his parents' home address within the Town of Oyster Bay. Pl's. Ex. C.

Christine Wiss testified on behalf of the defendants. She works in the Town Clerk's Office. Tr. 52. Wiss testified that her responsibilities include the processing of permits. Tr. 53. One hundred and fifteen shell-fishing licenses were issued in 2006. Tr. 57. Wiss' understanding of "residency" is that it is "someone's home," their "domicile." Tr. 57. Wiss testified that three applicants were denied clamming licenses on July 10, 2006, because of concerns regarding their proof of residency. Tr. 60-61. All three of these individuals were sent a letter similar to the one sent to plaintiff on July 13, 2006, asking him for additional proof of his residency through tax returns, renter's insurance, and/or a voter registration card. Tr. 63; Pl's. Ex. E. Wiss

6

testified that there were questions as to the residency of each of these applicants, but she did not specify as to the subject matter of those particular questions. Tr. 61.

In addition to his own testimony and other exhibits, the plaintiff offered in evidence the applications of thirteen persons who were granted a shell-fishing license. Pl's. Ex. D. On cross-examination, Wiss testified that none of those thirteen applicants were sent a letter similar to the one that the plaintiff received on July 13, 2006. Tr. 84. Of these successful applications, several submitted income tax documents. None submitted a renter's insurance policy or a voter registration card. Pl's Ex. D.

Upon questioning by the Court, Wiss testified that the reason why the plaintiff was denied a shell-fishing license had something to do with Rathgaber's association with individuals who previously sued, and are currently suing, the Town of Oyster Bay with regard to its shell-fishing permit requirements. Tr. 69-70.

> THE COURT: Why wasn't the proof submitted that I just recited sufficient to establish residency? There were bills -- he doesn't have to stay in the same residence for a year, just as long as he's a town resident for a year, right?
>
> THE WITNESS: Correct.
>
> THE COURT: And so assuming both of those residences of Eastern Parkway and Terrace Avenue are in the Town of Oyster Bay hasn't he submitted sufficient proof to establish his residency in the town to meet the code requirements?

> THE WITNESS: No.
>
> THE COURT: Why?
>
> THE WITNESS: Because of the -- because of the knowledge of the Schenna and Stevenson lawsuit that was brought to our attention there was an issue as to this particular application because there were inconsistencies.

Wiss did not explain what the "inconsistencies" were in Rathgaber's application. She did testify as to the "Schenna and Stevenson" lawsuit as follows:

> THE COURT: And you mentioned that part of that information was the Stevenson/Schenna lawsuit. What are you referring to?
>
> THE WITNESS: There was an issue based upon my limited knowledge of residency requirements for shell fish licenses in The Town of Oyster Bay.
>
> THE COURT: But what is the Schenna/Stevenson lawsuit? I don't know what you're referring to.
>
> THE WITNESS: We were -- my understanding is that we were in litigation. There was question as to Mr. Schenna's application in, I believe, '05. . . .
>
> This is -- the Bay men, the group of commercial shell fishers that are out there on a day-to-day basis, the 100-plus or so of them are very tight-knit group of people that work day to day and, you know, very hard in our bays and in our waters. So even when a new application, a new face comes in, there is an amount of scrutiny placed upon those applications, because as I said every -- you know, the same people come for licenses, commercial shell fish licenses in particular.

8

| | |
|---|---|
| | So when a new application is brought before the office, the information is collected, the information is reviewed either through The Clerk's Office in conjunction with The Town Attorney's Office in conjunction with looking at a variety of records. And that process can take a couple of hours and someone could be called back. It could take a couple of weeks. It could take, you know, six weeks, a month. I'm not answering your question. |
| THE COURT: | No, you are. Is there pressure exerted on the town from this group of bay men not to increase the number of licenses issued? |
| THE WITNESS: | Absolutely not. |

Tr. 72-73.

Judge Wall then compared the documentation that the plaintiff submitted to the Town with the proof of residency that Kenneth Howes submitted in support of his successful application. Howes submitted a marine permit certificate, a driver's license, a utility bill, and a college tuition statement. Tr. 74-75. The plaintiff submitted his New York State Driver's License, a boat registration, his New York State Marine Permit Certificate, and a letter from his telephone operator. Wiss admitted that the documents submitted by Howes were similar to the documents submitted by Rathgaber. Tr. 75. The only explanation that Wiss provided as a reason why Howes was issued a license and Rathgaber was not was because the address at 232 Eastern Parkway raised a "red flag" or a "flag" for the Clerk's office, and that "there was a problem with that address on another application." Tr. 70, 76.

9

One additional piece of evidence was admitted at the hearing. On June 22, 2006, the boat the that the plaintiff was working on was boarded by Nassau County Police and Rathgaber was issued a ticket for engaging in shell-fishing without a permit. Pl's Ex. F. According to the plaintiff, at this time he was serving as a "roper" on the boat of Richard Schenna. He testified that although some "ropers" had Town permits, he did not think it was required. Tr. 36-41, 50. After he received this ticket, Rathgaber returned to the Town Clerk's office on the same day to file his application for a shell-fishing permit. The ticket was provided to the plaintiff by the defendants as part of discovery in this case, and appeared in the Town's file annexed to a copy of a handwritten note. The note states:

> This guy is the mate of Richard Schenna. These guys are the ones everyone is complaining about. Schenna was very disrespectful to us also. At this time there appears to be a residency issue with both of them. Their drivers licenses have different addresses than what they gave the town for their licenses (shellfish)

Pl's Ex. E. The writer of the note is unknown, but the defendants' counsel stated at the hearing that it "was from a Nassau County Police Officer." Tr. 22.

### C. The Report and Recommendation

On December 20, 2006, Judge Wall issued his Report and Recommendation. Judge Wall made four findings of fact:

> 1.) In June 2006, Daniel Rathgaber presented uncontroverted evidence to the Town Clerk, evidence that established that he is a resident of the Town of Oyster Bay and has been since May 2005.

> 2.) Clamming permits were issued to other applicants on comparable or lesser evidence of residency.
>
> 3.) The reason for the denial of Rathgabler's application was his connection with Richard Schenna, who has filed two lawsuits against the Town in relation to its shell-fishing regulations.
>
> 4.) Rathgaber was treated differently than other, similarly situated, applicants for clamming permits.

Report and Recommendation at 2, 10. In making these findings, Judge Wall stated that it was "not necessary to rely on the [handwritten] note to find that the denial of Rathgaber's permit was based on his association with Schenna. The testimony of Wiss was sufficient for the court to reach that conclusion." Report and Recommendation at 9-10. Objections to the Report and Recommendation were required to be filed on or before January 5, 2007.

### D. The Objections of the Parties

On December 29, 2006, the plaintiff filed a document entitled an "Objection to Report and Recommendation." This document notes that Magistrate Judge Wall granted to the plaintiff "everything counsel asked for" and requests that this Court "issue the preliminary injunction directing the Town to issue to the plaintiff a clamming permit." The plaintiff's "objection" merely requests that the Court adopt Judge Wall's findings of fact and issue a preliminary injunction.

On December 30, 2006, the defendant filed objections to the Report and Recommendation. The defendant electronically filed this document a second time on

11

January 2, 2007. The two documents appear to be identical in all respects. The defendants object to three of Judge Wall's findings of fact, and argue that the plaintiff is not entitled to injunctive relief. The defendants do not object to Judge Wall's finding that clamming permits were issued to other applicants on comparable or lesser evidence of residency, but do argue that it is within the Town Clerk's discretion to do so, as part of its "legislative, administrative, investigatory, and discretionary functions relative to processing applications for any and all permits issued by the Town."

On March 23, 2007, the defendants filed a letter proposing a "partial resolution" of the matter. The Town offered to issue a temporary license to the plaintiff during the pendency of this action. In return for this relief, the defendants sought "a withdrawal of that portion of the [plaintiff's] motion, and, that the Report and Recommendation of Magistrate Wall be rescinded or vacated." On March 26, 2007, the plaintiff filed a letter rejecting this proposal.

## II. DISCUSSION

### A. As to the Defendant's Objections to the Report and Recommendation

Rule 72 of the Federal Rules of Civil Procedure and the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(A), provide the standard for district court review of a federal magistrate judge's order. For dispositive matters, the district court "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The court is

required to make a de novo determination of those portions of the report and recommendation to which specific objections are made. See 28 U.S.C. § 636(b)(1); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997).

When considering an appeal of magistrate judge's ruling on a nondispositive matter, a district judge will modify or set aside any portion of the magistrate's order found to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any [nondispositive] pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law."); Fed. R. Civ. P. Rule 72(a). A finding is clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948); United States v. Isiofia, 370 F.3d 226, 232 (2d Cir. 2004). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." Catskill Dev., L.L.C. v. Park Place Entm't Corp., 206 F.R.D. 78, 86 (S.D.N.Y. 2002) (citation omitted).

In this case, the Court requested that Judge Wall answer two specific factual questions: (1) "was the plaintiff a resident of the Town of Oyster Bay?"; and (2) "was he treated differently than similarly situated individuals?" The Court need not determine whether these findings should be reviewed for clear error or de novo, because under the less deferential de novo standard the Court would deny the

13

defendants' objections.  Having reviewed the testimony and evidence submitted at the hearing, the Court reaches the same conclusion as Judge Wall.

In support of his shell-fishing permit applications, the plaintiff submitted a driver's license, a New York State Marine Permit Certificate, a boat registration, a Sears bill, a Verizon bill, and a letter from his landlord.  All of these documents showed that the plaintiff lived within the Town of Oyster Bay at the time he made his application.  The Town did not grant the plaintiff a license.  Instead, they asked for more information.

By contrast, Kenneth Howes produced his driver's license, a New York State Marine Permit Certificate, a Keyspan bill, a LIPA bill addressed to his father, and documentation from the State University of New York, all reflecting his home address in the Town of Oyster Bay.  Howes received his permit on the same day he applied for it.

At oral argument, the Town Attorney offered reasons why a permit was not issued to the plaintiff.  The defendants argued that the plaintiff was not similarly situated to Howes, even though he submitted documentation similar to Howes, because despite that documentary evidence the Town had reasons to believe that the plaintiff did not really reside in the Town and that he was using the Farmingdale address as a sham residence.  According to the Town:

- investigations made by the Town Inspectors into the addresses at 232 Eastern Parkway and 30 Terrace drive indicated that these were "illegal residences that had maybe seven or eight individuals that just put a mattress there for purposes of creating a possible sham for residency purposes";
- "[T]he Village of Farmingdale Inspector . . . indicated that [one of the residences] is kind of fishy because they never see people coming in and out of there"; and
- "The landlord [of one of the residences] indicated when [the Town] took a statement from her that Mr. Schenna said if anybody comes and asks you whether I live here or not, just tell them I live here."

(Tr. at 9.) The defendants submitted no proof of these facts at the evidentiary hearing.

The defendants had a full opportunity before Judge Wall to submit documents and provide testimony as to the reasons why a permit was not issued to the plaintiff. There was no testimony or evidence regarding investigations by the Town inspectors or the Village of Farmingdale Inspector, or the alleged statements made to Schenna's landlord. The only reasons articulated by Wiss were unidentified "inconsistencies" and the "red flag" because of the knowledge of the Stevenson/Schenna lawsuit. For these reasons, and for the reasons stated by Judge Wall in support of his factual

findings, the Court denies the defendants' objections and fully adopts the Report and Recommendation.

Having resolved this factual dispute, the Court will now review the elements for the granting of a preliminary injunction.

### B. Standard for a Preliminary Injunction

As an initial matter, it is not clear that the plaintiff is seeking a preliminary injunction. The plaintiff's order to show cause seeks an order declaring the Town's durational residency requirement for shell-fishing licenses unconstitutional and directing the Town Clerk to issue a clamming license to him. In his complaint, the plaintiff seeks a judgment that, among other things, declares the Town's durational and geographical residency requirements to be unconstitutional. On its face, the plaintiff's order to show cause seeks the ultimate relief, and not provisional injunctive relief.

However, since the inception of this case the Court has been interpreting the plaintiff's order to show cause as a request for a preliminary injunction. Also, in his "objections" to the Report and Recommendation, the plaintiff requests that this Court "issue the preliminary injunction directing the Town to issue to the plaintiff a clamming permit." The Court will continue to treat the order to show as a request for a preliminary injunction.

A party seeking a preliminary injunction must demonstrate: "(1) irreparable harm, 'and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make it a fair ground for litigation, and a balance of hardships tipping decidedly in its favor.' " D.D. ex rel. V.D. v. New York City Bd. of Educ., 465 F.3d 503, 510 (2d Cir. 2006) (quoting MONY Group, Inc. v. Highfields Capital Mgmt., L.P., 368 F.3d 138, 143 (2d Cir. 2004)). Generally, the purpose of a preliminary injunction is to preserve the status of the parties until a determination on the merits of the plaintiffs' claims can be made. Univ. of Tex. v. Camenisch, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834, 68 L. Ed. 2d 175 (1981). However, a party may also seek an injunction that alters the status quo by directing another party to commit some act or behave in a manner different from that as of the time the dispute arose. A party seeking such a "mandatory injunction" faces a higher burden. D.D. ex rel. V.D., 465 F.3d at 510 (citing Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 33-34 (2d Cir. 1995)). In addition to demonstrating irreparable harm and that the balance of equities lay in its favor, a party seeking a mandatory injunction must also "make a clear or substantial showing of a likelihood of success on the merits." Id. (quoting Jolly v. Coughlin, 76 F.3d 468, 473 (2d Cir. 1996)).

In this case, in the Court's view, the plaintiff is seeking a mandatory injunction. Rathgaber has never been issued a shell-fishing permit. An injunction in

this case would not preserve the status quo, but rather would require the Town to commit the affirmative act of issuing a permit to Rathgaber. Thus, to succeed on this motion the plaintiff must satisfy the heightened standard for this relief, and he has done so. Based on Judge Wall's factual findings that Rathgaber is a resident of the Town of Oyster Bay, and that he was treated differently than a similarly situated person, the Court holds that Rathgaber has made a substantial showing of a likelihood of success on the merits.

The remaining elements of a preliminary injunction of irreparable harm and the balancing of the equities are easily met. Regarding irreparable harm, this is "injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." Forest City Daly Housing, Inc. v. Town of N. Hempstead, 175 F.3d 144, 153 (2d Cir. 1999) (quoting Rodriguez v. DeBuono, 162 F.3d 56, 61 (2d Cir. 1998)) (per curium) (internal quotation marks omitted). The violation of a constitutional right is considered "irreparable harm." See Charette v. Town of Oyster Bay, 159 F.3d 749, 755 (2d Cir. 1998); Covino v. Patrissi, 967 F.2d 73, 77 (2d Cir. 1992); Sims v. West, No. 05-CV-6122, 2007 WL 445990, *3 (W.D.N.Y. Feb. 8, 2007). The Court also finds that the burden of requiring the Town to issue a temporary permit to Rathgaber is less than the burden Rathgaber will face if the Town issues a temporary license to him. Also, the Town offered to issue a temporary license to him as part of their "partial resolution" in March, 2007. In

addition, at oral argument, the Town offered to issue a temporary license to the plaintiff with no condition attached.

Accordingly, the plaintiff's motion for a preliminary injunction seeking the issuance of a temporary shell-fishing permit to him is granted. The Court declines at this time to issue any declaratory relief with respect to the Town's geographical and durational residency requirements.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the plaintiff's motion for a preliminary injunction is granted; and it is further

**ORDERED**, that the defendants are directed to immediately issue a shell-fishing permit to the plaintiff Daniel Rathgaber; and it is further

**ORDERED**, that the parties are directed to contact Judge Wall for the purpose of completing discovery, if further discovery is necessary.

**SO ORDERED**.

Dated: Central Islip, New York
May 14, 2007

*/s/ Arthur D. Spatt*
ARTHUR D. SPATT
United States District Judge